J-S08007-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| JACQUELYN CLAIRE GOMEZ | : | |
| Appellant | : | No. 573 WDA 2019 |

Appeal from the PCRA Order Entered March 22, 2019
In the Court of Common Pleas of Blair County Criminal Division at No(s):
CP-07-CR-0001285-2016

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| JACQUELYN CLAIRE GOMEZ | : | |
| Appellant | : | No. 574 WDA 2019 |

Appeal from the PCRA Order Entered March 22, 2019
In the Court of Common Pleas of Blair County Criminal Division at No(s):
CP-07-CR-0001283-2016

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| JACQUELYN CLAIRE GOMEZ | : | |
| Appellant | : | No. 575 WDA 2019 |

Appeal from the PCRA Order Entered March 22, 2019
In the Court of Common Pleas of Blair County Criminal Division at No(s):
CP-07-CR-0001284-2016

BEFORE: OLSON, J., McCAFFERY, J., and MUSMANNO, J.

J-S08007-20

MEMORANDUM BY OLSON, J.:                           FILED MARCH 30, 2020

In this consolidated appeal, Appellant, Jacquelyn Claire Gomez, appeals from the order entered March 22, 2019, denying her petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546. [1] We reverse the order, vacate Appellant's judgment of sentence, and remand the case with instructions.

The PCRA court set forth the following procedural history:

> [Appellant] was charged with multiple violations of the Controlled Substance[, Drug, Device and Cosmetic] Act.[2] The Commonwealth alleged further that she was part of a corrupt organization formed for the purpose of distributing heroin and other illegal drugs in the Altoona, Pennsylvania area. The allegations were that beginning at some point before March[] 2015, heroin distribution began from a tattoo shop located on Fourth Street in Altoona, Blair County, Pennsylvania. It was alleged that [Appellant] and her husband, Norman Gomez, with whom she lived, were the source of the heroin. It was further alleged that [Appellant] and the codefendants traveled back and forth to New York to obtain large amounts of heroin in a vehicle registered to [Appellant] and were making an effort to buy half a kilogram of heroin. [Appellant allegedly] told other codefendants to quit giving deals on the heroin so they could make more money. The allegation was that the police investigation included use of confidential informants and direct police surveillance, in which [Appellant] and her husband were observed conducting drug transactions. After her formal arraignment, [Appellant] was

_____

[1] The record demonstrates that Appellant's notices of appeal complied with Commonwealth v. Walker, 185 A.3d 969 (Pa. 2018) and Commonwealth v. Creese, 216 A.3d 1142 (Pa. Super. 2019). This Court consolidated Appellant's appeals sua sponte. Per Curiam Order, 5/3/19.

[2] 35 P.S. §§ 780-101 to 780-144.

- 2 -

represented by several different attorneys, with her final attorney being A. Thomas Farrell[, Esq. ("Plea Counsel")].

After [the] jury was selected in her case, on May 1, 2017, [Appellant] pled guilty at [CP-07-CR-0001283-2016] to Criminal Conspiracy [for] Possession with Intent to Deliver a Controlled Substance, (Heroin), []Corrupt Organizations, []Dealing in Proceeds of Unlawful Activity, []Criminal Use of a Communication Facility, [and three counts of Possession with Intent to Deliver (Heroin).[3]] At [CP-07-CR-0001284-2016,] she pled guilty to []Use/Possession of Drug Paraphernalia[.[4]] At [CP-07-CR-0001285-2016,] she pled guilty to []Possession with Intent to Deliver (Heroin)[.[5]]

[Appellant] was sentenced to an aggregate period of 10 to 20 years in a state correctional institution. The [sentencing c]ourt noted in its sentencing order that the aggregate sentence was consistent with the negotiated plea by and between the Commonwealth and [Appellant]. [Appellant] was also to be afforded any and all appropriate credit for time served. In accepting [Appellant's] guilty pleas, the [sentencing c]ourt conducted an oral guilty plea colloquy with [Appellant]. Before the [sentencing c]ourt began the oral guilty plea colloquy, the [sentencing c]ourt asked whether there was anything else before the [sentencing c]ourt would begin the colloquy.

Attorney Weeks for the Commonwealth said, "Judge, I do, with a question about credit for time served. The Commonwealth did indicate that we would not have any opposition, although it's not up to the Commonwealth obviously, for [Appellant] to receive concurrency in her [parole violation sentence.[6]] Obviously[,] the

_____

[3] 18 Pa.C.S.A. §§ 903, 911(b)(1), 5111(a)(1), 7512(a) and 35 P.S. 780-113(a)(30), respectively.

[4] 35 P.S. 780-113(a)(32).

[5] 35 P.S. 780-113(a)(30).

[6] The record demonstrates that Appellant was recommitted to a state correctional institution for a period of 4 years, 3 months and 12 days for a direct violation of her parole that arose from the instant charges. PCRA Hearing Petitioners Exhibit 4-Notice of Parole Board Decision. Appellant was

Commonwealth can't control that. That can't be a binding part of the agreement but the Commonwealth does not object to that and won't make a recommendation for additional jail time."

The [sentencing c]ourt began the oral colloquy by asking [Appellant] her name. She stated[, "]Jacquelyn Claire Alberts Gomez.["] She stated that she intended to enter guilty pleas to some of the charges lodged against her. She acknowledged that by pleading guilty to these charges she would be giving up [her] right to []a jury trial where she would be presumed innocent and could remain silent. At that point a jury had been picked for her, and it was her decision as to whether to plead guilty or go to trial. She acknowledged that by pleading guilty, she would be giving up [her] right to [a] jury trial. She acknowledged that [Plea Counsel] explained the maximum possible sentences to her in regards to this matter. The [sentencing c]ourt inquired as to her understanding that the [sentencing c]ourt does not have to accept the plea agreement and she agreed that she understood. She asserted that she was not under the influence of anything that would prevent her from understanding everything that was happening that day. She asserted that nobody was forcing her against her will to plead guilty. The [sentencing c]ourt went through the charges and what the plea would be. The [sentencing c]ourt asked whether that was [Appellant's] understanding of the plea agreement and [Plea Counsel] replied for her, "Yes, Your Honor[."]

[T]he [sentencing c]ourt asked [Appellant] whether she understood what the crimes that had just been outlined were, and whether she was specifically admitting guilt to those crimes. She asserted that she understood what each individual crime was, and that she was pleading guilty to that charge because she was guilty of the charge. There was a waiver of presentence investigation. The [sentencing c]ourt accepted the guilty pleas, finding them to be knowing, voluntary, and intelligent. The [sentencing c]ourt then dictated the sentence. The [sentencing c]ourt then asked [Appellant], "Did you hear everything that was said today?"

_____

previously convicted of criminal conspiracy for possession with the intent to deliver, corrupt organizations, dealing in proceeds of unlawful activity, criminal use of a communication facility, possession with intent to deliver (7 counts), and use/possession of drug paraphernalia. Id.; see also 18 Pa.C.S.A. §§ 903, 911(b)(1), 5111(a)(1), 7512(a) and 35 P.S. §§ 780-113(a)(30) and 780-113(a)(32), respectively.

> [Appellant] responded, "Yes[."] The [sentencing c]ourt asked, "Did you understand everything that was said today?" [Appellant] responded, "Yes ma'am[,"] and the [sentencing c]ourt asked, "Is this your understanding of what you pled guilty to and are being sentenced to?" [Appellant] responded, "Yes, ma'am[."]

PCRA Court Opinion, 3/28/19, at 1-6 (record citations omitted). Appellant did not file a post-sentence motion.

On July 3, 2017, Appellant filed pro se a PCRA petition. The PCRA court appointed Philip M. Masorti, Esq. ("Attorney Masorti"), as counsel to represent Appellant. Attorney Masorti filed an amended PCRA petition on February 20, 2018, raising a claim of ineffective assistance of counsel that led Appellant to enter an unknowing, unintelligent, and involuntary guilty plea. Appellant's Amended PCRA Petition, 2/20/18. Attorney Masorti also filed a Turner/Finley[7] no merit letter stating that the claims raised by Appellant in her pro se PCRA petition were without merit, but the ineffectiveness claim raised in the amended PCRA petition was meritorious. Turner/Finley No Merit Letter, 2/20/18, at 1-2.

On May 23, 2018, the PCRA court directed Appellant to file an amended PCRA petition regarding "the alleged claim of ineffective assistance of counsel resulting in a guilty plea induced by the mistaken legal conclusion that [Appellant's] parole violation could be run concurrent to her 10 to 20[-]year sentence[.]" PCRA Court Order, 5/23/18. On June 11, 2018, Appellant filed, for a second time, her amended PCRA petition. After conducting a hearing on

_____

[7] Commonwealth v. Turner, 544 A.2d 927 (Pa. 1988); Commonwealth v. Finley, 550 A.2d 213 (Pa. Super. 1988) (en banc).

- 5 -

the matter, the PCRA court denied Appellant's amended PCRA petition on March 22, 2019. PCRA Court Order, 3/22/19. On March 28, 2019, the PCRA court entered an order denying Appellant's amended PCRA petition for a second time, as well as an opinion setting forth its rationale for the denial. PCRA Court Order and Opinion, 3/28/19. Appellant filed a timely notice of appeal of the March 22, 2018 PCRA court order.[8]

Appellant raises the following issue for our review: "Whether the [PCRA] court erred in denying Appellant's [amended] PCRA [p]etition because Appellant's plea was entered unknowingly and involuntarily based on plea counsel's inaccurate information regarding the possibility of the sentence running concurrent with Appellant's state parole [violation] sentence." Appellant's Brief at 5.

_____

[8] The PCRA court directed Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). A review of the record does not demonstrate that Appellant filed of record a Rule 1925(b) statement pursuant to Rule 1925(b)(1), as directed. However, Appellant's brief contains, as an appendix, a copy of her Rule 1925(b) statement dated May 16, 2019, together with a certificate of service demonstrating that a copy of the Rule 1925(b) statement was served on the PCRA court. On June 6, 2019, the PCRA court indicated in a letter to this Court that it relied on its March 28, 2019 opinion that addressed the merits of the issue Appellant raised in her Rule 1925(b) statement. Accordingly, Appellant did not waive her issue on appeal for failure to file of record a Rule 1925(b) statement where a copy was attached to Appellant's brief, the PCRA court received a copy of the Rule 1925(b) statement, and the PCRA court addressed the merit of the issue in its opinion. See, e.g., Commonwealth v. Presley, 193 A.3d 436, 442 (Pa. Super. 2018) (holding, appellate court may address merits of issue raised in late-filed Rule 1925(b) statement where PCRA court addressed merits of issue in its Rule 1925(a) opinion), appeal denied, 201 A.3d 154 (Pa. 2019).

Proper appellate review of a PCRA court's dismissal of a PCRA petition is limited to the examination of "whether the PCRA court's determination is supported by the record and free of legal error." Commonwealth v. Miller, 102 A.3d 988, 992 (Pa. Super. 2014) (citation omitted). "The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." Commonwealth v. Lawson, 90 A.3d 1, 4 (Pa. Super. 2014) (citations omitted). "This Court grants great deference to the findings of the PCRA court, and we will not disturb those findings merely because the record could support a contrary holding." Commonwealth v. Hickman, 799 A.2d 136, 140 (Pa. Super. 2002) (citation omitted). In contrast, we review the PCRA court's legal conclusions de novo. Commonwealth v. Henkel, 90 A.3d 16, 20 (Pa. Super. 2014) (en banc), appeal denied, 101 A.3d 785 (Pa. 2014).

> To be eligible for relief based on a claim of ineffective assistance of counsel, a PCRA petitioner must demonstrate, by a preponderance of the evidence, that (1) the underlying claim is of arguable merit; (2) no reasonable basis existed for counsel's action or omission; and (3) there is a reasonable probability that the result of the proceeding would have been different absent such error. Commonwealth v. Steele, 961 A.2d 786, 796 (Pa. 2008).

Commonwealth v. Matias, 63 A.3d 807, 810 (Pa. Super. 2013), appeal denied, 74 A.3d 1030 (Pa. 2013). "The failure to satisfy any one of the prongs requires rejection of the petitioner's claim." Commonwealth v. Williams, 141 A.3d 440, 454 (Pa. 2016) (citation omitted). "[T]he law presumes that counsel was effective and the burden of proving that this presumption is false

rests with the petitioner." Commonwealth v. Cox, 983 A.3d 666, 678 (Pa. 2009) (citation omitted). "Whether prejudice resulted from the entry of the guilty plea is not measured by the severity or leniency of the sentence imposed; prejudice inheres when an accused pleads guilty, thus convicting himself of a criminal offense, without understanding the significance or consequences of his action." Commonwealth v. Zuber, 353 A.2d 441, 445 (Pa. 1976) (citation, original quotation marks, and emphasis omitted).

"Allegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused the defendant to enter an involuntary or unknowing plea." Hickman, 799 A.2d at 141 (citation omitted). "Once the defendant has entered a guilty plea, it is presumed that he was aware of what he was doing, and the burden of proving involuntariness is upon him." Commonwealth v. Willis, 68 A.3d 997, 1002 (Pa. Super. 2013) (citation omitted). The totality of the circumstances surrounding a guilty plea must be examined to determine if the guilty plea was entered voluntarily, knowingly, and intelligently. Commonwealth v. Allen, 732 A.2d 582, 589 (Pa. 1999).

> The Pennsylvania Rules of Criminal Procedure mandate that pleas be taken in open court, and require the [sentencing] court to conduct an on-the-record colloquy to ascertain whether a defendant is aware of his rights and the consequences of his plea. Specifically, the [sentencing] court must affirmatively demonstrate the defendant understands: (1) the nature of the charges to which he is pleading guilty; (2) the factual basis for the plea; (3) his right to trial by jury; (4) the presumption of innocence; (5) the permissible ranges of sentences and fines possible; and (6) that the [sentencing] court is not bound by the

terms of the agreement unless the [sentencing] court accepts the agreement.

Commonwealth v. Kelley, 136 A.3d 1007, 1013 (Pa. Super. 2016) (citations omitted). When a plea agreement has been reached, the terms of that agreement must be stated in open court. Zuber, 353 A.2d at 444 (citations omitted).

"[C]ounsel's failure to advise his client regarding the collateral consequence of parole revocation in an unrelated matter would not, without more, constitute a basis for allowing the defendant to withdraw his guilty plea."[9] Commonwealth v. Barndt, 74 A.3d 185, 195-196 (Pa. Super. 2013) (citation and emphasis omitted). "[C]ounsel's omission to mention a collateral consequence of a guilty plea does not constitute ineffective assistance of counsel[. However,] counsel's assistance is constitutionally ineffective when counsel misapprehends the consequences of a given plea and misleads his client accordingly about those consequences, without regard to whether the consequences in question are 'direct' or 'collateral.'" Id. at 196 (citation omitted).

Section 6138 of the Prisons and Parole Code states, in pertinent part,

_____

[9] Our Supreme Court has defined the difference between a direct consequence and a collateral consequence of a guilty plea as the distinction between a criminal penalty and a civil requirement over which the sentencing court has no control. Commonwealth v. Leidig, 956 A.2d 399, 404 (Pa. 2008), citing Commonwealth v. Duffey, 639 A.2d 1174 (Pa. 1994), cert. denied, 513 U.S. 884 (1994). A collateral consequence of a guilty plea is "one that is not related to the length or nature of the sentence imposed on the basis of the plea." Leidig, 956 A.2d at 404 (citation and original quotation marks omitted).

§ 6138. Violation of terms of parole

(a) Convicted violators.--

(1) A parolee under the jurisdiction of the board released from a correctional facility who, during the period of parole or while delinquent on parole, commits a crime punishable by imprisonment, for which the parolee is convicted or found guilty by a judge or jury or to which the parolee pleads guilty or nolo contendere at any time thereafter in a court of record, may at the discretion of the board be recommitted as a parole violator.

. . .

(5) If a new sentence is imposed on the parolee, the service of the balance of the term originally imposed by a Pennsylvania court shall precede the commencement of the new term imposed in the following cases:

(i) If a person is paroled from a State correctional institution and the new sentence imposed on the person is to be served in the State correctional institution.

61 Pa.C.S.A. § 6138(a)(1) and (5)(i). "[W]here a state parolee gets a new state sentence, he [or she] must serve [the parole violation sentence] first before commencement of the new state sentence. Imposition of a new state sentence concurrent with [the parole violation sentence] is an illegal sentence under [Section 6138]." Kelley, 136 A.3d at 1013 (citations omitted).

Here, Appellant argues that she entered her guilty plea unknowingly, involuntarily, and unintelligently because Plea Counsel led her to believe that the sentence for her parole violation and the sentence she received in the instant case could be served concurrently. Appellant's Brief at 15. Appellant avers that Plea Counsel was unaware of Section 6138, which precluded concurrent sentences and required her parole violation sentence to be served before her instant sentence, and that there is no reasonable basis for Plea

Counsel's failure to advise Appellant of the impossibility of concurrent sentences. Id. at 23, 25. Appellant contends that, but for the Commonwealth's agreement not to oppose concurrent sentences, Appellant would not have accepted the plea agreement and, instead, would have gone to trial. Id. at 30-31. Appellant alleges that the only condition that changed throughout the plea negotiations was the Commonwealth's agreement not to oppose concurrent sentences and it was only after this agreement that Appellant accepted the plea agreement terms. Id.

The PCRA court found that Appellant's argument lacked credibility "based on a totality of the testimony of [Plea Counsel] and [Appellant]" and because Appellant failed to "include this issue in her [pro se] PCRA [petition, demonstrating] that this was an issue included [in her amended PCRA petition] only after careful review of the record by new counsel, who discovered the argument."[10] PCRA Court Opinion, 3/28/19, at 17. The PCRA court found that "although [Plea Counsel] was [un]aware that it was not possible to run the [parole violation] sentence concurrently with the new sentence, he did not mislead [Appellant] or give her erroneous advice, directly or by omission."

_____

[10] Indigent petitioners are entitled to the appointment of PCRA counsel on their first PCRA petition in order to help petitioners understand the law and develop sound legal arguments for relief that the petitioners might not otherwise understand. See, e.g., Commonwealth v. Smith, 818 A.2d 494, 501 (Pa. 2003) (stating, "[w]ithout legal counsel, an indigent first-time PCRA petitioner would not know of the necessity of demonstrating the existence of an exception to the [jurisdictional] time-bar"). We find no basis of support for the PCRA court's conclusion that Appellant failed to demonstrate prejudice because she failed to raise the issue in her pro se PCRA petition and only raised the issue after the appointment of PCRA counsel.

Id. at 19. The PCRA court credited Plea Counsel's testimony that Appellant "decided to plead guilty based on her exposure to 40 years' incarceration, the lack of a legitimate defense in her case, and the advice of her husband[.]" Id.

A review of the record demonstrates that Plea Counsel was unaware of Section 6138 prior to the entry of Appellant's guilty plea and did not understand that Section 6138 barred concurrent service of Appellant's instant sentence and any sentence she received for her parole violation. Id. at 11; see also, N.T., 8/30/18, at 11-14, N.T., 6/20/18, at Appellant's Exhibit 3 – Plea Counsel's Letter. Therefore, Appellant's ineffectiveness claim has arguable merit.

As to the reasonable basis prong, we can conceive of no instance where an attorney would have a reasonable basis justifying his or her failure to understand the legal principles relevant to a client's circumstances. Similarly, we can conceive of no justification for an attorney to erroneously advise his or her client or to omit a discussion of relevant legal principles pertinent to the client's stated concerns thereby misleading the client or allowing the client to believe in false hopes. When asked if he had any reasonable basis to tell Appellant that her sentences could be served concurrently, Plea Counsel testified that his only reason was the Commonwealth's agreement not to object to concurrent sentences and his belief, "that would have some impact" on Appellant's pleading guilty. N.T., 8/30/18, at 55. Learning after the fact that Section 6138 prohibited concurrent sentences, Plea Counsel stated he had no reasonable basis for giving incorrect legal advice, emphasizing that

"[n]o one should give incorrect legal advice." Id. Therefore, Appellant has satisfied the reasonable basis prong of her ineffectiveness claim.

Turning to the prejudice prong, we are guided by Zuber, supra, in which our Supreme Court found that as part of the plea agreement presented in open court, the Commonwealth stated it would "join with defense counsel in a request to the State Board of Parole that the new sentence run concurrently with appellant's" parole violation sentence. Zuber, 353 A.2d at 443 (emphasis in original). Our Supreme Court found that the "promise by the Commonwealth was a false and empty one since the law is quite clear that a parole violator convicted and sentenced to prison for another offense must serve his or her [parole violation sentence] and the new sentence in consecutive order." Id. (citations omitted). The Zuber Court found that appellant's rejection of prior plea offers for lengthier terms of imprisonment demonstrated that the length of time spent in prison was an important consideration in appellant's decision to plead guilty. Id. at 445. Appellant was aware that although the Commonwealth promised to join in a request for concurrent sentences, concurrent sentences were not guaranteed. Id. Ultimately, the Zuber Court concluded the specific promise by the Commonwealth to join in a request for concurrent sentences made in open court prior to appellant's entering a guilty plea was a void promise. Id. at 444-445. And, importantly, appellant's reliance on this promise in entering a guilty plea rendered the plea involuntary and unknowing. Id. at 445.

Here, the record demonstrates that prior to the sentencing court's oral guilty plea colloquy of Appellant, the Commonwealth stated,

> The Commonwealth did indicate that we would not have any opposition, although it's not up to the Commonwealth obviously, for [Appellant] to receive concurrency on her [parole violation sentence]. Obviously[,] the Commonwealth can't control that. That can't be a binding part of the [plea] agreement but the Commonwealth does not object to that and won't make a recommendation for additional jail time.

N.T., 5/1/17, at 2-3. Following the Commonwealth's statement, neither the Commonwealth, the sentencing court, nor Plea Counsel advised Appellant that Section 6138 prohibited concurrent sentences regardless of whether the Commonwealth opposed concurrency or not. Id. Instead, the sentencing court proceeded to ask Appellant, among other things, if she understood that the plea agreement was for a sentence of 10 to 20 years' incarceration to which Appellant stated she understood the sentence. Id. at 5, 8-9. Plea Counsel never objected to the Commonwealth's statement and neither Plea Counsel nor the sentencing court clarified the priority of the parole violation sentence and the impossibility of concurrent sentences. Id. at 2-3.

The PCRA court found, and the record supports, that Appellant was offered several plea agreements, including "the first one being 30 years, the second one being 20 years, and the third one, when she was represented by [Plea Counsel], being 10 to 20 years, which was offered immediately before jury selection." PCRA Court Opinion, 3/28/19, at 13; see also N.T., 8/30/19, at 10, 19-20. Appellant rejected all of these offers and proceeded with jury

selection. PCRA Court Opinion, 3/28/19, at 13; see also N.T., 8/30/19, at 10, 19-20. After jury selection, Appellant was again presented with a plea offer of 10 to 20 years' incarceration but now with the agreement that "the Commonwealth would have no recommendation or no objection to [the sentence in] the instant case being run concurrently with the [parole violation sentence.]" N.T., 8/30/19, at 10-11. When asked whether the Commonwealth's agreement not to oppose concurrent sentences was the sole factor that led Appellant to accept the plea agreement, Plea Counsel stated that he did not know, but the Commonwealth's agreement was part of the plea offer he presented to Appellant. Id. at 11. The PCRA court rejected Appellant's testimony that she had no intention of pleading guilty without the assurance of receiving concurrent sentences. PCRA Court Opinion, 3/28/19, at 14. The record, however, belies this finding.

In order to demonstrate prejudice, Appellant need only establish a reasonable probability that she would have gone to trial rather than plead guilty. Barndt, 74 A.3d at 200. "[T]he reasonable probability standard in this context is not especially stringent, but requires only a probability sufficient to undermine confidence in the outcome." Id. (citations omitted).

Here, the record demonstrates that Appellant received several plea offers, including one for the identical length of time, 10 to 20 years, as the plea offer she ultimately accepted. She rejected all offers involving lengthier periods of incarceration. Moreover, the only difference between the two offers with identical terms of imprisonment was that the offer she accepted included

the Commonwealth's promise not to oppose concurrent sentences. Although the record supports a finding that this was not the only factor Appellant considered in pleading guilty, it was the factor that swung the pendulum from non-acceptance to acceptance of the plea offer. The promise, however, was a false promise, void ab initio, as it constituted a legal impossibility the Commonwealth, the sentencing court, and Plea Counsel should have known. The Commonwealth's extension of this false promise in open court prior to Appellant's guilty plea and Plea Counsel's failure to point out the impossibility of this promise, together with his statement to Appellant that it "can't hurt" to ask for concurrent sentences (N.T., 8/30/18, at 17), established sufficient probability that Appellant was misled into believing concurrent sentences, while not guaranteed, were at least a possibility. The misleading circumstances surrounding Appellant's guilty plea, as supported by the record, combined with counsel's failure to advise and discuss relevant statutory law, is sufficient, under the totality of the circumstances, to undermine our confidence in Appellant's guilty plea. Therefore, Appellant demonstrated she was prejudiced by the Commonwealth's false promise and counsel's ineffectiveness. Consequently, we are constrained to conclude that Appellant did not enter a knowing, voluntary, and intelligent guilty plea.

Under the circumstances of this case, the PCRA court erred in denying Appellant's PCRA petition for failure to demonstrate a claim for ineffective assistance of trial counsel. Accordingly, we reverse the order denying

Appellant's PCRA petition, vacate Appellant's sentence, and remand this case in order that Appellant may withdraw her guilty plea.

Order reversed. Judgment of sentence vacated. Case remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/30/2020